Ramón Montaner, Administrador General del Fondo del Seguro del Estado, recurrente, *v.* Comisión Industrial de Puerto Rico, compuesta por los Sres. M. León Parra, Presidente y F. Paz Granela y Juan M. Herrero, Comisionados Asociados, demandada; y Ramón Rodríguez Torres, patrono recurrido y no asegurado ante la Comisión Industrial, y Aurea Natal, Etc., beneficiarios del obrero.

Núm. 185.—*Sometido:* Abril 29, 1940. *Resuelto:* Julio 26, 1940.

*Hon. Procurador General George A. Malcolm, E. de Aldrey, Procurador General Auxiliar, y Víctor J. Vidal González,* abogado éste del Fondo del Seguro del Estado, abogados del recurrente; *M. León Parra,* abogado de la demandada; *Víctor M. Sánchez Fernández,* abogado del patrono; *Virgilio Brunet,* abogado de los beneficiarios.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Este recurso fué declarado con lugar por sentencia de marzo 12, 1940. Los beneficiarios por su abogado presentaron una moción de reconsideración tan bien argumentada que nos hizo dudar de si habíamos acertado o no en la interpretación de los hechos y la ley. Se dejó sin efecto la sentencia y el caso quedó abierto de nuevo.

Los abogados del Fondo del Estado y el de los beneficiarios informaron otra vez oralmente, presentando además amplios alegatos en apoyo de sus respectivas posiciones. Con el beneficio de su estudio—del anterior y del posterior a la

sentencia del 12 de marzo—hicimos el nuestro y hemos llegado a la misma conclusión a que antes llegáramos, a saber, la póliza que tenía el patrono no cubre el accidente. Al narrar los hechos nos limitaremos a exponer aquéllos que consideramos indispensables para la debida solución del problema.

De los autos resulta que el patrono Ramón Rodríguez solicitó cubierta en 1936–37 para un negocio permanente de empresa de transporte, rindiendo informe de jornales y de los cuatro *trucks* que operaba, expidiéndosele la correspondiente póliza en mayo 22, 1937, para cubrir el resto del año, bajo la clasificación 7219, empresa de transporte. Al año siguiente, 1937–38, se actuó de igual modo. En el otro año, en agosto 29, 1938, el patrono informó al Jefe de Seguros del Fondo del Estado que para el año 1938–39 había dejado de ser dueño de los *trucks* consignados en las pólizas de años anteriores y que se dedicaría a contratista de obras públicas, solicitando cubierta para un contrato que acababa de obtener para transportar quince mil novecientas cincuenta y seis pipas de asfalto en las carreteras de Puerto Rico, proponiéndose utilizar veinte obreros con un *payroll* de $1,357, de acuerdo con cuya información el Fondo del Estado le expidió póliza para cubrir dicha operación.

El patrono se dedicó además a transportar gravilla de la cantera de Iriarte a cierta carretera insular, y trabajando en ese transporte murió el obrero Juan Hernández. Después de ocurrido el accidente el patrono trató de ampliar su póliza cubriendo el contrato de transporte de gravilla. Reportado el caso, fué investigado por el Fondo del Seguro del Estado y su Administrador resolvió que la póliza expedida al patrono no cubría el accidente que ocasionó la muerte al obrero. Se apeló a la Comisión Industrial que revocó la decisión del Administrador. Éste le pidió que la reconsiderara y la Comisión se negó. El Administrador interpuso entonces el presente recurso de revisión.

Sosteniendo el criterio de la Comisión, los beneficiarios alegan que el párrafo primero del artículo 23 de la Ley núm. 45 de 1935 ((1) pág. 251) establece que el Administrador del Fondo del Seguro del Estado deberá preparar una lista de clasificaciones de acuerdo con los oficios e industrias a que se refiere la ley y que dicho funcionario cumpliendo el mandato legislativo fijó para el año 1938-39 la clasificación número 7219, como sigue:

"TRANSPORTE—Empresas de....Por *trucks,* excluyendo *express.* Incluyendo carreteros, *chauffeurs* y ayudantes cuadreros y empleados del taller y garaje, etc."

Que en septiembre 8, 1937, se promulgó de conformidad con la ley el Boletín Administrativo número 547, cuya regla IX, inciso 3, dispone:

"Las operaciones que han de ser objeto del seguro deberán especificarse en la póliza en forma idéntica a la que aparece en la lista de clasificaciones y con los números y tipos correspondientes."

Que en este caso lo que el patrono interesaba asegurar era su "operación de transporte" y en la lista de clasificaciones preparada por el Administrador del Fondo la operación de transporte aparece descrita bajo el número 7219, en la siguiente forma:

"TRANSPORTE—Empresas de....Por *trucks,* excluyendo *express.* Incluyendo carreteros, *chauffeurs* y ayudantes cuadreros y empleados del taller y garaje, etc."

Que siendo ello así, la operación de transporte *debió especificarse* en la póliza que se expidió *en forma idéntica* a la que aparecía en la lista de clasificaciones y no como se hizo sin autoridad de ley por el Administrador.

Y que tratándose de un seguro del Estado instituído para bien de los obreros, la póliza debe interpretarse como si se hubiera otorgado siguiendo la ley y el reglamento, en cuyo caso no hay duda de que cubre el accidente.

Para reafirmar su posición invocan los dichos beneficiarios la regla tercera del Boletín Administrativo 547 que dis-

pone que "Cada tipo de prima ofrece cubierta completa a los riesgos descritos en la clasificación correspondiente," y se extienden en la explicación del significado de la palabra "operaciones" usada en las reglas, para concluir que aquí el transporte de gravilla no era una operación distinta del transporte de pipas de petróleo y por tanto que no se necesitaba una ampliación de la póliza, esto es, que aquí sólo existió desde el principio hasta el fin una sola "operación", la de transporte.

Persuasivo es el argumento de los beneficiarios que sólo hemos expuesto en substancia y que ellos adornan con citas y ejemplos más o menos pertinentes.

Sin embargo, la realidad de los hechos y la propia ley interpretada por la jurisprudencia, justifican la acción tomada por el Administrador al expedir la póliza en la forma en que lo hizo a petición del propio patrono en este caso.

Recientemente en *Miró v. Comisión Industrial,* 56 D.P.R. 127, 131, 133, dijo este tribunal por medio de su Juez Asociado Sr. Wolf:

"De la Ley de Compensaciones por Accidentes del Trabajo (Núm. 45 de 1935, ((1) pág. 251), se verá que existen dos clases de patronos: permanentes y ocasionales. Los patronos permanentes que realizan la misma clase de trabajo año tras año remiten al Fondo del Seguro del Estado en o antes del 15 de julio de cada año, copia de la nómina total de sus negocios para el año fiscal anterior. El Administrador del Fondo clasifica los empleados de acuerdo con el trabajo que éstos ejecutan. Entonces, tomando como base la nómina anterior impone los tipos que ha fijado a las varias clasificaciones, asumiendo por el momento que la nómina para el siguiente año será exactamente igual a la del anterior. Al finalizar el año fiscal el Administrador una vez más tiene la nómina a la vista. Compara la del año anterior con la del presente. Cualquier diferencia que resulte a favor del Fondo le es cobrada al patrono. Si la diferencia es a favor de éste se le acredita en cuenta contra futuras primas. Y esta nómina además de servir de base para la liquidación del seguro que ha estado en vigor para el año que acaba de expirar, sirve nuevamente de base para el cobro de primas para el siguiente año.

"El patrono temporero u ocasional se halla en posición distinta. Cuando se propone iniciar el trabajo acude al Administrador y le somete un estimado de los jornales por el tiempo que dure el trabajo. Se le imponen las primas. Al terminarse el trabajo somete la nómina que en realidad ha pagado y se hace la liquidación.

"....El patrono ocasional, conforme hemos dicho antes, no es aquél cuyo trabajo es regular año tras año y cuyas nóminas son archivadas el 15 de julio de cada año, sino aquél que radica un estimado de su nómina al iniciar una obra que se liquida al ser terminada. La póliza no se le expide por el año fiscal sino por la duración del trabajo. Se desprende en su consecuencia que Miró es un patrono ocasional."

Y aquí claramente se trata del caso de un patrono ocasional que acude al Fondo del Estado a asegurarse del riesgo que envuelve un solo negocio dentro del negocio general de transporte, una aislada operación dentro de la operación general de transporte por medio de *trucks*. Y para expedir una póliza limitada en tal caso tiene por lo menos facultad implícita el Administrador y una vez expedida sólo podrá hacerse valer de acuerdo con sus términos.

Los hechos ocurridos revelan que se trata de un patrono que conocía la ley. Fué dueño de *trucks* y se dedicó al negocio de transporte en general por dos años, obteniendo del Fondo del Seguro del Estado mediante el pago de las primas —provisional y definitiva—correspondientes, la amplia póliza que la ley y los reglamentos autorizan.

Cesó en su negocio, se dedicó a contratista y lo comunicó al Fondo, y cuando obtuvo un contrato especial de transporte acudió al Fondo y se le expidió una póliza para asegurar sus riesgos a base de los probables jornales a pagar. Y era lo natural y propio que cada vez que obtuviera un nuevo contrato acudiera de nuevo al Fondo para asegurar sus riesgos ampliando su póliza a base de los probables jornales que habría de satisfacer. Esa fué la interpretación que el propio patrono dió a la ley y a las reglas en este caso. Como ya expresamos, trató de obtener la ampliación, pero cuando lo hizo no era posible por haber ocurrido el accidente.

440

Interpretar la ley y las reglas de otro modo sería dar carta blanca a un patrono que mediante la declaración de un contrato aislado de transporte obtuviera una póliza garantizando las indemnizaciones por accidentes de obreros que pudieran ocurrir en el mismo calculándose la prima a base de los probables jornales a pagar, para que si obtenía otros contratos durante la vigencia de la póliza pudiera actuar como si estuviera cubierta su responsabilidad, y ello sería abiertamente injusto para con el Fondo del Seguro del Estado porque quedaría a voluntad del patrono ampliar el pago de la prima sólo en el caso de que le ocurriera un accidente que lo obligara a declarar los jornales del contrato dentro del cual sucedió.

*Por virtud de todo lo expuesto y de lo que consta en nuestra anterior opinión en la que los hechos se narraron con mayor amplitud y se transcribió gran parte de la opinión de la Comisión Industrial, debe declararse con lugar el recurso y revocarse las resoluciones de la Comisión Industrial recurridas.*

El Juez Asociado Sr. De Jesús no intervino.